### Rowe-Genereux, Inc. v. Department of Taxes

[411 A.2d 1345]

No. 226-79

Present: Barney, C.J., Daley, Billings and Hill, JJ., and Smith, J. (Ret.), Specially Assigned

Opinion Filed February 5, 1980

*Kiel & Freeman,* Springfield, for Plaintiff.

*M. Jerome Diamond,* Attorney General, and *Edwin L. Hobson, Jr.,* Assistant Attorney General, Montpelier, for Defendant.

**Hill, J.** This case involves a constitutional challenge, under both the Due Process Clause of the Fourteenth Amendment and the Commerce Clause of Article I, Section 8, of the United States Constitution, to Vermont's power to impose a use tax collection obligation on an out-of-state seller.[1]

---

[1] In most general terms, the Due Process Clause requires that there be some minimum relationship between the taxpayer or collector and the taxing state that provides a taxable "nexus." The Commerce Clause, on the other hand, mandates that there must not be an unreasonable burden on the free flow of goods and services

The out-of-state seller, Rowe-Genereux, Inc. (Rowe), a New Hampshire-based corporation located seven miles from the Vermont border, was assessed tax deficiencies in the amount of $11,038.83[2] for its failure to collect the 3% Vermont use tax, 32 V.S.A. §§ 9772–9773, from its Vermont customers on sales of carpet and furniture delivered into Vermont. The State did not seek to impose a collection obligation on Rowe for any sales other than those in which delivery was made into Vermont in Rowe's own truck. Rowe appealed the assessment to the Vermont Commissioner of Taxes who affirmed the assessment in full, holding that Rowe's deliveries of furniture and carpet into Vermont constituted "Vermont sales" under 32 V.S.A. § 9701(6), since transfer of both title and possession took place in Vermont. As the Commissioner found that the Vermont sales tax was properly collectible, the applicability of the complementary use tax provisions of 32 V.S.A. § 9773 was not discussed.

Rowe subsequently appealed the Commissioner's decision to the Washington Superior Court, 32 V.S.A. § 9817, again raising its constitutional claims. The superior court, analyzing the situation presented as a use tax collection obligation rather than as a sales tax collection obligation, upheld the Commissioner's determination in full, stating that the "nexus" required by the constitution between a taxing state and the party on which it seeks to impose a collection obligation was more than adequate in light of the facts presented. It is from this decision that Rowe appeals.

## I. The Tax

Vermont law imposes a 3% tax on the sale of tangible personal property at retail in Vermont, and a complementary compensating use tax on the privilege of using such property within the state when the transaction is not subject to the

___

across state lines. Despite the difference in emphasis, however, the test for determining whether the imposition of a state use tax violates the requirements of either clause is similar. The "simple but controlling question is whether the state has given anything for which it can ask return." *National Bellas Hess, Inc.* v. *Department of Revenue*, 386 U.S. 753, 756 (1967) (quoting *Wisconsin* v. *J. C. Penney Co.*, 311 U.S. 435, 444 (1940)).

[2] This figure includes $6,289.60 in back taxes, $3,282.85 in interest, $1,389.56 in late filing fees, and $76.82 in penalties.

sales tax. 32 V.S.A. §§ 9771–9773. In either case, while the tax is imposed on the purchaser, the seller must collect the tax from the purchaser and remit it to the State of Vermont, or else the seller is held personally liable. 32 V.S.A. §§ 9703, 9775–9776, 9778. The out-of-state seller is compensated, however, for services rendered in collecting and remitting the tax, 32 V.S.A. § 9776, and a credit is provided for sales and use taxes paid on the same property to another state. 32 V.S.A. § 9744(a)(3).

Relying on the definitions contained in the sales and use tax statutory scheme, the State argues that the sales of furniture and carpet by Rowe were "Vermont sales" and that, therefore, they are subject to the Vermont sales tax. Rowe, on the other hand, contends that the sales occurred in New Hampshire, that the use of the goods was in Vermont, and that, as a result, if any tax is applicable it is the Vermont use tax.

A sale is defined as "any transfer of title or possession or both, . . . in any manner or by any means whatsoever for a consideration, or any agreement therefor." 32 V.S.A. § 9701(6). The sales that the State seeks to characterize as "Vermont sales" occurred as a result of Vermont residents travelling to Rowe's store in New Hampshire, where they entered into transactions that varied from payment on the spot, to cash on delivery, to some form of financing. A sales slip was generally prepared and subsequent delivery, if necessary, was arranged. If installation of the goods purchased was required, Rowe would offer to take care of the arrangements. In light of these facts, and despite the State's reliance on the fact that transfer of title or possession occurs on delivery in Vermont under 9A V.S.A. § 2—401(2), which while persuasive is not the controlling definition here, we fail to see how the present transactions do not fit into the plain meaning of 32 V.S.A. § 9701(6) as being, at the very least, an agreement for the transfer of title or possession. Because the sales took place in New Hampshire, the superior court properly analyzed this case as involving a use tax collection obligation.

A use tax is a necessary complement to a state's sales tax, and is used as a revenue-raising device in almost all fifty states. See [Current] 1 All State Sales Tax Rep. (CCH) ¶ 301. It is designed to protect a state's revenues by taking

away the advantages to residents of travelling out of state to make untaxed purchases, and to protect local merchants from out-of-state competition which, because of its lower or non-existent tax burdens, can offer lower prices. See *Miller Brothers Co.* v. *Maryland*, 347 U.S. 340, 343 (1954). See also Note, *State Use Taxes After National Geographic Society* v. *California Board of Equalization*, 64 Va. L. Rev. 145, 148–50 (1978). Since the collection of the use tax from individual resident purchasers, however, would be an administrative nightmare, all states, including Vermont, which have such taxation schemes place the collection obligation on the out-of-state seller. See 32 V.S.A. §§ 9701(14), 9778.

The constitutionality of compensating use tax schemes is well settled. *Henneford* v. *Silas Mason Co.*, 300 U.S. 577, 582–83 (1937). And, although the constitutionality of imposing a collection obligation on the out-of-state seller is equally well settled, *Felt & Tarrant Manufacturing Co.* v. *Gallagher*, 306 U.S. 62, 67–68 (1939), there has been controversy over the requisite degree of in-state activity that an out-of-state seller must have before a state may require the seller to act as its collection agent. The Supreme Court has not pronounced a precise standard by which to judge whether an out-of-state seller has the requisite level of local activity, but instead has chosen to consider each case on its particular facts. It is necessary, therefore, to briefly review these cases so that we may discern those factors to which the Supreme Court has attached significance.

## II. The Supreme Court's "Nexus" Standard

In the seminal case of *Miller Brothers Co.* v. *Maryland, supra,* Mr. Justice Jackson articulated the often quoted requirement that for a state to impose a collection obligation on an out-of-state seller there must be "some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax." *Id.* at 344–45. The factual situation in *Miller Brothers* involved a Delaware retailer which only sold directly to customers at its store in Delaware. Residents of neighboring Maryland would go to Miller Brothers' store to make purchases, and occasionally Miller Brothers would arrange for delivery into Maryland either by common carrier or in its own truck. Miller Brothers had no resident agent or

outlets in Maryland, nor did it advertise in Maryland media, although its advertisements in the Delaware media did make their way into Maryland. The State of Maryland sought to require Miller Brothers to collect a use tax from Maryland residents who purchased goods at the Delaware store. Based on these facts, the Supreme Court held that Maryland could not constitutionally impose a use tax obligation on Miller Brothers.

The Court placed emphasis on a number of considerations. First, it concluded that because, under the facts, Maryland could not have reached the Delaware vendor with its sales tax, "[i]t would be a strange law that would make [the vendor] more vulnerable to liability" for use taxes due from Maryland residents. *Id.* at 345–46. Second, as pointed out in subsequent Supreme Court opinions, "it was impossible for Miller [Brothers] to determine that the goods sold for cash to a customer over the counter at its store" were destined for use in Maryland. *Scripto, Inc.* v. *Carson,* 362 U.S. 207, 212 (1960); *National Geographic Society* v. *California Board of Equalization,* 430 U.S. 551, 561–62 (1977). Lastly, even though Miller Brothers made "occasional" deliveries into Maryland, and despite the fact that its Delaware advertisements reached the Maryland market, the court found that Marylanders went to Delaware to make purchases, Miller Brothers did not go to Maryland to make sales. Accordingly, the Court held that there "was no invasion or exploitation of the consumer market in Maryland." *Miller Brothers Co.* v. *Maryland, supra,* 347 U.S. at 347.

The next use tax obligation case to come before the Supreme Court was *Scripto, Inc.* v. *Carson, supra,* which involved a Georgia merchandising corporation that had no office, property or agents in the taxing state of Florida. Orders for Scripto's products were solicited in Florida by ten resident "jobbers," who would forward orders to Georgia for shipment of the ordered goods. Stating that the fact that the jobbers were independent contractors was of no constitutional significance, the Court applied the same general standard adopted in *Miller Brothers,* but concluded that based on the facts presented, the requisite minimum connections with Florida were adequately satisfied.

Following seven years after *Scripto* was *National Bellas Hess, Inc.* v. *Department of Revenue,* 386 U.S. 753 (1967), in which the state of Illinois sought to impose a use tax collection

obligation on a Missouri based mail order house that had no property, outlets or sales representatives in the taxing state. National engaged in neither local deliveries nor local advertising. Its sole contacts with Illinois were via the United States mail or common carrier. Again applying the nexus test adopted in *Miller Brothers*, the Court held that a state could not require a seller to collect its use tax where the seller's only connection with customers in the state is by common carrier or through the mails.

The most recent of *Miller Brothers'* progeny was *National Geographic Society* v. *California Board of Equalization, supra*. In that case, the state of California sought to compel the Society to collect use taxes on all its interstate mail order sales of maps, atlases, globes and books into California. In addition to its mail order contacts with California, the Society maintained two offices in the state. These offices, however, performed no activities related to the Society's interstate mail order business on which the state sought to impose the use tax collection obligation.

Finding, in apparent contradiction of *Miller Brothers*, that the burdens imposed on interstate commerce are less in requiring a seller to collect a use tax, as opposed to requiring it to pay a sales tax, the Court held that the nexus required between the taxing state and the person, property or transaction sought to be taxed need not be as close in the use tax situation as in the sales tax context. *Id.* at 557–58. Accord, *McLeod* v. *J. E. Dilworth Co.*, 322 U.S. 327, 330 (1944) ("A sales tax and a use tax in many instances bring about the same result. But they are different in conception, are assessments upon different transactions, and . . . may have to justify themselves on different constitutional grounds.") See also Note, *supra*, 64 Va. L. Rev. at 156. Furthermore, despite the fact that the existence of no nexus or relationship between the activity of the seller sought to be taxed and the seller's activity within the state would be fatal to a state's ability to impose a sales tax, the Court held that "such dissociation does not bar the imposition of [a] use-tax-collection duty." *National Geographic, supra*, 430 U.S. at 560. A relationship or nexus between the seller and the taxing state would, in the Supreme Court's opinion, suffice. *Id.*

While the Supreme Court itself has admitted that its decisions in this area are not always clear or consistent, *Miller Brothers Co.* v. *Maryland, supra,* 347 U.S. at 344, there are certain common threads running throughout which will aid our resolution of the present case. First, it seems clear that the nexus requirement for sales taxes and use taxes is different, and that a lesser nature or extent of connections will pass constitutional muster in the latter case. Second, the "presence" of the out-of-state seller within the taxing state must be more than occasional deliveries by company truck as in *Miller Brothers,* but perhaps less than the degree of "presence" established by ten jobbers soliciting orders within the state in *Scripto.* Third, the requisite nexus can be found in the case of a mail order seller with retail outlets, solicitors or property within the taxing state as in *National Geographic,* but cannot be found where the out-of-state seller merely communicates with customers in the taxing state by mail or common carrier as in *National Bellas Hess.*

## III. Rowe's Vermont Contacts

The facts of the present case split down the middle the distinctions that the Supreme Court has made in *Miller Brothers* and its offspring. The assessment at issue covers the period from October 1969 through 1977. The parties have stipulated, however, that the calendar years 1976 and 1977 are to be used as test years for all purposes pertinent to this appeal.

Rowe is not registered to do business in Vermont, nor does it have a resident agent, office, or telephone listing in the state. It did, however, avail itself of Vermont-based media, The Bellows Falls Shopper, and Springfield radio station WCFR, in its advertising during the two-year test period. During that period, Rowe also advertised in New Hampshire-based media, including one radio station and four newspapers, all of which circulated in both the Vermont and New Hampshire markets. Rowe's Vermont newspaper advertising costs amounted to $1,335 or 21% of its total newspaper advertising budget in 1976, and $2,032 or 25% of its total newspaper advertising budget in 1977. Its Vermont radio costs amounted to $276 or 15% of its total radio costs in 1976, and $368 or 15% of its total radio costs in 1977. Rowe discontinued all of its advertising in Vermont-based media by year end 1977.

Rowe delivers in its own truck furniture and carpet into Vermont. In this regard, we note that Rowe takes advantage of roads built and maintained by the state of Vermont. The deliveries are often made C.O.D., and trade-ins of used furniture may be picked up in Vermont, with the purchaser receiving a credit against the price of the new goods. The total amount of sales made and services performed by Rowe in Vermont was $29,104 or 18% of its total receipts in 1976, and $31,523 or 18% of its total receipts in 1977.

Rowe also offers installation services to its customers, the cost of which is normally included in the overall purchase price, although it will be stated separately on the request of the customer. Should the customer decide to have Rowe install the goods, it contracts with a New Hampshire-based installer to do the work and attempts to get a down payment to cover the cost of installation. During 1976, services performed by Rowe in Vermont amounted to $379.05 or 14.3% of its total services, and during 1977, similar services amounted to $1,228.20 or 29% of Rowe's total services. Included within these amounts was a job that Rowe contracted to do for Mental Health Services of Vermont, a tax-exempt organization. Rowe subcontracted out the job which involved wall repair, painting, and installation of floor covering in the Service's Bellows Falls, Vermont, building.

In those cases where a customer needed financing for the sale, Rowe would first advise him to investigate possibilities at his own bank, but if that financing proved unavailable, Rowe would provide assistance in obtaining financing through a local New Hampshire bank. In about 10% of its sales, however, Rowe did its own financing and retained a security interest in the property that was financed. No finance statement was filed in Vermont, since, under 9A V.S.A. § 9—302(1)(d) and 382-A N.H. Rev. Stat. Ann. § 9–302, a filing is not necessary to perfect. Moreover, on one occasion in 1977, Rowe repossessed goods in which it had a security interest by bringing an action in the Windsor Superior Court in Vermont, and by using the services of the Windsor County Sheriff.

In light of the substantial connections with Vermont, we do not believe that either the Due Process Clause or the Commerce Clause requires a reversal of the superior court's decision. Nor do we believe, as Rowe argues, that *Miller*

*Brothers* compels a different result. In *Miller Brothers*, the Court struck down Maryland's attempt to require the seller to collect a use tax because, in part, the state could not constitutionally exact a sales tax on the same sales. But, as we have seen, the Supreme Court has apparently repudiated this reasoning, and has held that a lesser "presence" is sufficient to require a seller to collect a use tax than to pay a sales tax. *National Geographic Society* v. *California Board of Equalization, supra*, 430 U.S. at 557–58; *McLeod* v. *J. E. Dilworth Co., supra*, 322 U.S. at 330. Nor are we presented here with the uncertainty of destination of the goods sold over the counter that so bothered the majority in *Miller Brothers*, for the state of Vermont seeks to require Rowe to collect a use tax only on those sales in which it delivers the goods in its own truck into Vermont. See *National Geographic Society* v. *California Board of Equalization, supra*, 430 U.S. at 561–62; *Scripto, Inc.* v. *Carson, supra*, 362 U.S. at 212. Furthermore, the fact that Rowe availed itself of the use of Vermont roads in its deliveries, Vermont media in its advertising, and the Vermont court system and a Vermont county sheriff's office in its business dealings leads us to conclude that Vermont has given something for which it can ask return.

IV. Assessment of Interest, Penalties, and Late Filing Fees

Rowe further contends that if this Court finds that the use tax was properly collectible, the assessment of interest, penalties and late filing fees should not be upheld.

This Court has previously held that the authority of the Commissioner of Taxes to abate penalties and interest imposed under 32 V.S.A. § 9814 is purely discretionary, and that his decision will not be overturned except for abuse. 32 V.S.A. § 9702(a)(2); *Mt. Mansfield Television, Inc.* v. *Commissioner of Taxes*, 133 Vt. 284, 287, 336 A.2d 193, 195 (1975). Based on the facts of the present case, we are satisfied that no abuse of discretion took place.

*Affirmed.*