[Civ. No. 17860. First Dist., Div. One. Jan. 23, 1959.]

INDEPENDENT IRON WORKS, INC. (a Corporation), Appellant, v. STATE BOARD OF EQUALIZATION et al., Respondents.

Lloyd W. Dinkelspiel, Charles A. Wood, Jr., and Heller, Ehrman, White & McAuliffe for Appellant.

Edmund G. Brown, Attorney General, James E. Sabine, Assistant Attorney General, Ernest P. Goodman, Eugene B. Jacobs and Harry W. Low, Deputy Attorneys General, for Respondents.

PETERS, P. J.—This action was brought by a taxpayer to recover two penalties levied by the board against it under the provisions of the Sales Tax Act. One was a mandatory late payment penalty imposed under section 6565 of the Revenue and Taxation Code, and the other was a negligence penalty imposed under section 6484 of the same code. From a judgment in favor of the board the plaintiff appeals.

The complaint here involved was filed by the taxpayer on October 17, 1955. The complaint alleged that the tax period involved was from July 1, 1950, to June 30, 1953; that the taxpayer had filed returns for that period; that on September 22, 1953, the board notified the taxpayer of an additional assessment and of the imposition of the two penalties; that the taxpayer protested; that thereafter the deficiency assessment and the two penalties were reduced; that the deficiency assessment and the two penalties were paid by the taxpayer; that on October 12, 1954, the taxpayer filed its claim for refund; that the claim was denied; that the taxpayer requests the refund of $7,474.88, the amount of the two penalties. In an exhibit attached to the complaint it is averred that the 10 per cent negligence penalty was imposed because the taxpayer kept its books in an improper fashion, and it is averred that its method of keeping books was proper and did not constitute negligence. It is also averred in the exhibit that the reason for the late payment was that the accountants it employed failed to file a timely protest; that the taxpayer should not be held responsible for this failure; that in periods prior to 1950 the taxpayer had made overpayments of its tax

totaling $25,000; that it should be permitted to offset these overpayments against the penalties even though the claim for such overpayments was barred by the statute of limitations. Insofar as this contention involves claimed overpayments prior to 1950, it has now been abandoned.

The answer of the board denies that the two penalties were wrongfully imposed and collected. It is averred that the board gave the taxpayer timely notice of an additional assessment of $45,711.31, plus interest, plus a 10 per cent negligence penalty; that the taxpayer failed to pay this assessment and failed to challenge it; that on October 22, 1953, this assessment became final and an additional 10 per cent penalty for failure to pay the tax was assessed; that thereafter, and beyond the time permitted by law, an untimely protest was filed by the taxpayer on January 18, 1954; that the board nevertheless made a reaudit of the taxpayer's books; that on such voluntary reaudit the assessment was reduced to $37,374.39 and the two 10 per cent penalties reduced accordingly.

On these issues, the trial court entered its judgment in favor of the board, and the taxpayer appeals.

The evidence, so far as pertinent, produced at the hearing was as follows: For the tax period July 1, 1950, to June 30, 1953, on September 22, 1953, the board notified the taxpayer of a deficiency assessment of $45,711.31 and of a 10 per cent negligence penalty. This deficiency assessment became final on October 22, 1953. Prior to that date the taxpayer neither paid nor challenged the assessment. Upon failure to pay, an additional 10 per cent penalty was imposed as required by law. In January of 1954 the taxpayer filed its protest against the additional assessment and penalties. Even though the additional assessment and penalties were then final, the board made a reaudit of the taxpayer's books and voluntarily reduced the assessment from $45,711.31 to $37,374.39, and also reduced the two 10 per cent penalties accordingly.

The taxpayer is a company engaged in the structural steel business. Since 1924 it has adopted a method of accounting acceptable to the federal and state taxing authorities and a method that is commonly used in the industry. In its sales tax returns for the 1950-1953 period it made certain errors which are the basis for the reassessment and the penalties here imposed. These errors were of three types.

1. The taxpayer issued resale certificates to manufacturers from which it acquired various supplies which were consumed

by it in its business. As these supplies were assigned to particular jobs, the taxpayer, contrary to the rules of the board, failed to report the tax.

2. The taxpayer failed to report out-of-state sales, that is, contracts to be completed out of the state. Under the then existing provisions of the sales and use tax laws, such transactions were taxable.

3. The taxpayer just failed to submit returns on between 27 to 30 transactions during the taxable year that should have been reported.

Although the evidence is conflicting, substantial evidence supports the conclusion that none of these errors was generic to the taxpayer's accounting system. These errors could have been avoided had the taxpayer properly evaluated the information contained in its accounting system. The board's witnesses testified that the errors were the result of the improper extracting of information from the taxpayer's own accounts.

The evidence also shows that during the tax period here involved—1950 to 1953—the taxpayer had actual notice that the items included in the deficiency assessment should have been reported. The board had audited the taxpayer's accounts for the 1947-1950 tax period in 1950, and had discovered certain deficiencies. These errors were explained to the taxpayer and the working papers resulting from the audit were turned over to the taxpayer. In spite of this fact, the taxpayer committed some of the same errors in the 1950-1953 period that it had committed during the 1947-1950 period. The bulk of the taxpayer's deficiency was caused by its failure to properly report materials assigned to contracts being performed by it. This same identical error was committed in the 1947-1950 period, and, even though the taxpayer was thoroughly informed of the proper procedures, it committed the same error in the 1950-1953 period.

The evidence shows that no penalties were imposed for the errors discovered in the 1947-1950 audit. Although the evidence is conflicting on the issue, that in favor of the board is that no negligence penalty was imposed because the 1950 audit was a first audit by the board, and that the board seldom, if ever, imposes a negligence penalty for errors discovered on a first audit.

The appellant now claims that it made certain overpayments of its tax during the 1950-1953 period and that, even

though barred by the statute of limitations, it should be permitted to offset these overpayments against the penalties. The evidence on this issue was meager and conflicting.

The original reassessment for the 1950-1953 period was in the amount of $45,711.31. Thereafter, the taxpayer filed a late protest. The state caused a reaudit of the taxpayer's books to be made even though the deficiency assessment and penalties were then final. On such reaudit the deficiency was reduced to $37,374.39, and the two 10 per cent penalties were reduced accordingly. The board reduced the deficiency because the auditors for the board discovered on the reaudit that the taxpayer had been incorrectly reflecting certain exempt freight charges as part of its gross sale receipts. The state auditors called this to the attention of the taxpayer and the taxpayer prepared a proper schedule of these overcharges and submitted it to the board. Admittedly, the total amount claimed was not refunded. The auditor for the board testified that this was because some freight charges were properly taxable, and these were deducted from the refund. This witness was quite clear that this was the sole reason why some of the freight charges were disallowed, and was positive that none of the freight charges for the entire 1950-1953 period were disallowed because of the statute of limitations.

On the other hand, the vice-president and treasurer of the taxpayer testified that $5,521.76 of the tax claimed by the taxpayer as a refund was for the period July 1, 1950, to June 30, 1951, and that this amount was disallowed by the board because of the statute of limitations.

This is the only evidence relating to claimed overpayments by the taxpayer that were not allowed as refunds. On this conflicting evidence the trial court specifically found that ''there is no sufficient evidence to justify the application of the 'doctrine of equitable recoupment.' ''

▇ On this appeal appellant first attacks the 10 per cent negligence penalty, claiming that the evidence does not support its imposition. The contention is without merit.

In arguing this point appellant relies on the testimony of its own witnesses that the errors were caused by reason of appellant's accounting system, that the system used was a proper one, and that to change it would impose an unconscionable burden on the taxpayer.

In its opening brief appellant makes no mention of the 1947-1950 audit during which it was notified of the nature of the errors it was committing. In its reply brief, after

respondent had called attention to the facts surrounding this audit in its brief, appellant vigorously contends that all the evidence relating to this 1947-1950 audit was irrelevant and inadmissible.

On the issue of how much was due for the tax period 1950-1953, appellant is obviously correct that audits prior to that time were irrelevant. But the evidence relating to the prior audits was not introduced on the issue of the amount of tax imposed, but on the issue of whether or not the board was justified in imposing a negligence penalty. The prior audit showed that prior to the 1950-1953 tax period, the taxpayer's attention was specifically directed to certain errors it was making in its returns. The 1950-1953 audit disclosed that the taxpayer continued to report its tax under methods it knew, and had been informed, were erroneous and illegal. Certainly, the point need not be labored that the ignoring of the notice received by it in the prior audit was relevant and admissible on the negligence issue.

In addition to this evidence that supports the imposition of the 10 per cent negligence penalty, there was evidence of numerous transactions that just were not reported by the taxpayer, and which failure had nothing to do with the accounting system adopted by it. This, too, was evidence of negligence. Thus, the finding on this issue is amply supported by the evidence.

■ Appellant also contends that the negligence penalty, insofar as it is based on that part of the additional assessment involving the out-of-state sales, that is, contracts to be completed out of the state, was unjustified because there was an ''honest dispute'' over the legality of such a tax. It may be assumed that a bona fide and reasonable belief that a particular transaction is not taxable would prevent the imposition of a negligence penalty. But here, the appellant not only failed to prove that it had such a bona fide and reasonable belief, but the evidence shows that, reasonably, it could not have had such a belief. In the 1947-1950 audit heavy assessments were made against the taxpayer because it had failed to report these out-of-state sales. Appellant was then notified that these sales were considered taxable by the board. Thus, the taxpayer knew, or should have known, that the board considered the transactions taxable. If the taxpayer honestly believed that the imposition of the tax was unconstitutional, as appellant now seems to contend, it should have followed the procedure of reporting the transactions, then

paying the tax and then suing for a refund. The fact that the taxpayer did not follow this procedure implies that no "honest dispute" existed. It is of some significance that in 1956 the constitutionality of taxing sales consummated out of the state but originating in California was upheld. (*Levine v. State Board of Equalization*, 142 Cal.App.2d 760 [299 P.2d 738].)*

■ This brings us to the contention of appellant that it made certain overpayments for the 1950-1953 tax period that were disallowed and that, under the doctrine of equitable recoupment, it should be entitled to recover these claimed overpayments, even though a claim for them is barred by the statute of limitations. Although this point is now vigorously urged on this appeal, it was not a major issue before the trial court. It was not until the closing moments of the trial that appellant produced the very scant evidence on this issue to which reference has already been made.

The overpayments that appellant claims were disallowed admittedly were barred by section 6902 of the Revenue and Taxation Code which provides that the board shall approve no claim for refund of taxes unless such a claim for refund is filed within three years of the last day of the month following the close of the quarterly period for which the overpayment was made. Section 6905 of the code provides that failure to file a claim within the time prescribed constitutes a waiver of any demand against the state on account of the claimed overpayment.

Appellant admits that these sections bar any claim for refund of the taxes here in dispute, but claims that, under the doctrine of equitable recoupment, the amount of such overpayment for the same taxable period may be used as a setoff against the claim of the state for a deficiency or for a penalty.

If it be assumed, contrary to the fact, that the evidence shows an overpayment of taxes for the period 1950-1953 which was disallowed because of the running of the statute of limitations, and if we assume, contrary to the fact, that this is a proceeding involving a setoff, then we would be presented with the question as to whether California will

---

*It should be mentioned that in 1953, after the taxable period here involved, the state amended section 6009.1 of the Revenue and Taxation Code (Stats. of 1953, chap. 972, § 1, p. 2460) to provide that such transactions are not taxable under the Sales or Use Taxes. This statute changed the rule formerly existing, and has no relevancy to the tax period here involved.

permit a setoff of such taxes against penalties assessed for the same taxable period under the doctrine of equitable recoupment.

A brief discussion of the extent and application of the doctrine will demonstrate that it is not here applicable. It should first be mentioned that whether California will enforce such doctrine has not, as yet, been decided by the California courts. The doctrine had its origin in the federal courts. The United States Supreme Court has held that where the government attempts to impose a deficiency assessment, the taxpayer may interpose a setoff in the event that the taxpayer has made overpayments of its tax with regard to the same taxable event upon which the government's claim to a deficiency is predicated, even though the claim for a refund is barred by the statute of limitations. Thus, in *Bull* v. *United States*, 295 U.S. 247 [55 S.Ct. 695, 79 L.Ed. 1421], the tax commissioner taxed the same sum of money under both the estate and income tax laws. The correct tax was the income tax. In a suit by the government to collect that tax, the taxpayer was permitted to recoup the estate tax erroneously paid, on the theory that, equitably, the commissioner should not be permitted to recover two taxes on inconsistent theories.

In *Rothensies* v. *Electric Storage Battery Co.*, 329 U.S. 296 [67 S.Ct. 271, 91 L.Ed. 296], it was held that the doctrine of equitable recoupment should be limited to situations where "the single transaction or taxable event had been subjected to two taxes on inconsistent legal theories." In such event "what was mistakenly paid [may be] recouped against what [is] correctly due." (P. 300.) In that case the Supreme Court disallowed a recoupment claim under the following facts: From 1919 to 1926 the taxpayer had been mistakenly paying excise taxes on certain materials. In 1926 the taxpayer claimed and received a refund of the amount of excise tax it had paid from 1922-1926, but the claim was barred on the 1919-1922 payments. Because it had deducted the amount of the excise taxes from its income over the years involved, the government determined to tax the refund as income. Taxpayer paid the assessment of income tax and brought a claim for refund, or recoupment, of the amount of unrecoverable excise taxes (1919-1922). This claim, the Supreme Court, in reversing the lower courts, disallowed, on the grounds that the overpayment of taxes did not arise out of the same transaction or taxable event involved in the government's assess-

ment of income tax. The court pointed out that to apply the recoupment doctrine under these facts would be to render the statute of limitations meaningless because if the doctrine applied to such a state of facts, the taxpayer could resurrect old overpayment claims whenever the government attempted enforcement of any tax.

The New York Court of Appeals enforced a broader application of the doctrine in *National Cash Register Co.* v. *Joseph* (1949), 299 N.Y. 200 [86 N.E.2d 561, 12 A.L.R.2d 812]. In that case, also involving a sales tax, an audit for 1935 to 1940 of the taxpayer's accounts revealed a deficiency of $45,000. Plaintiff brought an action for a review of the determination of the amount of the deficiency and review of taxing authority's denial of a claim of refund for $11,000 alleged to have been overpaid during the same audit period. The statute of limitations had run against direct recovery of the overpayments. The court held that the claim should have been allowed since the government had itself decided to ''open up'' the period involved. The court held that the overpayments came within the one transaction doctrine of the Rothensies case.

The New York case has been criticized. (See notes, 49 Columb.L.Rev. 1156; 63 Harv.L.Rev. 369.)

The federal law, to some extent, has been codified. (See *Section 820 of the Revenue Act of 1938* by Maguire, Surrey and Traynor, 48 Yale Law Journal 509, 719.)

It may be assumed that the equitable conscience of the California appellate courts is as sensitive to fair play as the conscience of the United States Supreme Court, and perhaps as sensitive as that of the New York Court of Appeals. For the purposes of this opinion, but without deciding the issue, it may be assumed that the doctrine of equitable recoupment exists in this state. Such an assumption would not assist the appellant, because, under the facts of this case, the doctrine, even in its broadest application, is not applicable. This is so for several reasons:

1. This action was not one for recoupment against a deficiency assessment of claimed overpayments. It was an action by the taxpayer to recover certain penalties assessed against it. The doctrine of recoupment has no application to such an action. This is so because the negligence penalty under attack was imposed because the taxpayer, with full knowledge of what it was doing, disregarded the tax statutes for the entire three-year audit period, not just for the one-

year period in which the claimed overpayments were made. Since the amount of the deficiency assessment as reduced was not attacked, it is difficult to see how the doctrine of equitable recoupment could apply in a direct action by the taxpayer to recover penalties.

2. There is another conclusive reason why the doctrine could not apply to the facts of the present case, and that is that the taxpayer failed in its proof. The trial court expressly so found, and that finding is amply supported. As already pointed out, *supra*, there is a conflict in the evidence as to whether or not the taxpayer did, in fact, make any overpayments during the entire three-year period which were barred by the statute of limitations and which the board refused to allow as a deduction. The evidence most favorable to the board is to the effect that no such overpayments were made or disallowed. We are bound by that testimony.

The appellant points out that one of its witnesses referred to a letter from the board which purportedly stated that certain overpayments were barred and therefore disallowed as deductions against the deficiency assessment. Appellant's counsel failed to have the letter introduced into evidence so that it is not properly before us. Nevertheless, appellant attempts to use the letter to attack the testimony to which reference has already been made. Even if the letter could be considered, which it cannot, it would merely create a further conflict in the evidence. The evidence that no overpayments were disallowed as deductions is clear and unequivocal. We are bound by that testimony.

3. Another reason why recoupment could not possibly be here applicable is that the record shows that the appellant has failed to exhaust its administrative remedies as required by California law. This is a direct action by the taxpayer to recover tax penalties, not a defensive action in the nature of a setoff. Even if it be assumed, however, that a suit in equitable recoupment could be brought by the taxpayer after the imposition of a deficiency assessment, it would not assist this taxpayer, because such an action could only be brought under California law after the taxpayer has exhausted its administrative remedies. Appellant seems to be arguing that it may file such a suit and contest the administrative action, without regard to other administrative remedies that it may have. That is not the law. In *West Publishing Co.* v. *McColgan*, 27 Cal.2d 705, 712 [166 P.2d 861], the court stated: "If the commissioner erred in his computation, the error could

easily have been avoided by giving him the necessary information at the outset, or it could have been corrected by giving the necessary information upon the filing of the claim for refund. Plaintiff cannot complain of alleged errors in the computation of tax liability, when it refused to avail itself of its administrative remedies to prevent or correct such errors. [Many citations.]''

In *People* v. *West Publishing Co.*, 35 Cal.2d 80, 92 [216 P.2d 441], the court, in discussing certain claimed but barred exemptions, used the following language: ''Appellant seeks to offset against the assessment, which was based upon estimated sales of $900,000 for the tax period in question, the amount which it claims to be attributable to sales to state agencies for both that tax period and a later tax period, without making any showing at any stage of the proceedings that the amount of its actual sales, less the claimed sales to such agencies, was not far in excess of the estimate of $900,000. Under these circumstances, it appears peculiarly appropriate here to apply the rule requiring the taxpayer to exhaust administrative remedies before asking for judicial relief, and it becomes unnecessary to discuss the question of whether a counterclaim may ever be interposed in an action brought by the state for the purpose of enforcing a tax liability.''

It must be remembered that under the law the board was not required to pay any attention to the taxpayer's letter of protest of January, 1954. This is so because the two penalty assessments of September 22, 1953, became final on October 22, 1953. If the taxpayer believed that it had grounds for recoupment against any portion of the deficiency assessment it should have first exhausted its administrative remedies before instituting a direct action against the board to recover the penalties. This it elected not to do. This is fatal to an action subsequently brought.

For the foregoing reasons the judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.