716 P.2d 1318

**OLD WEST REALTY, INC., an Idaho corporation, Plaintiff-Appellant,**

**v.**

**IDAHO STATE TAX COMMISSION, Defendant-Respondent.**

**No. 15876.**

Supreme Court of Idaho.

April 3, 1986.

Joseph M. Meier, of Clemons, Cosho & Humphrey, Boise, for plaintiff-appellant.

Jim Jones, Atty. Gen., and Theodore V. Spangler, Deputy Atty. Gen., Boise, for defendant-respondent.

BAKES, Justice.

Old West Realty (Old West) appeals a decision of the district court granting summary judgment in favor of respondent tax commission. The district court ruled that the transfer of multiple listing booklets from Ada County Multiple Listing Service (Ada MLS) to appellant constituted a taxable transaction under the Idaho sales and/or use tax provisions, I.C. §§ 63–3601 *et seq.*, because: (1) the transaction involved the transfer of tangible personal property, I.C. § 63–3616, and (2) any incidental service provided along with the transfer was inconsequential. On appeal Old West contends that the transaction in question involved the sale of services and that any incidental transfer of tangible personal property was inconsequential to the sale of services. We affirm the district court.

■ A good portion of the facts in the present case were stipulated to by the parties. Additionally, it is important to note that both parties moved for summary judgment, relying upon the same evidentiary facts and only questioning the application of the Idaho Sales Tax Act provisions to those facts. The district court was sitting without a jury in this case. Thus, as we held in Riverside Development Co. v. Ritchie, 103 Idaho 515, 519, 650 P.2d 657, 661 (1982), the district court was entitled to resolve any conflicting inferences which may be drawn from the undisputed evidentiary facts.

The essential undisputed facts are as follows. Old West Realty is a member broker of Ada MLS. Each month Old West is assessed a monthly fee of $30–43 per real estate salesman associated with the broker. During the period in question the number of salesmen working for Old West has been between 4 and 5 during any given month. Thus, the total fee assessed the brokerage has averaged around $150. In consideration of the payment of the monthly fee, Old West receives, *inter alia,* a

weekly or bi-weekly multiple listing booklet (MLS book) for each salesman.[1]

■ During the relevant time period of this case the Idaho Sales Tax Act (Act) imposed an excise tax of 3% on the "sale price" of every "sale at retail" of tangible personal property. I.C. § 63–3619. The taxing authority conferred by the Act is expansive. Tangible personal property is defined as "personal property which may be seen, weighed, measured, felt or touched, or which is in any other manner perceptible to the senses." I.C. § 63–3616. Admittedly, the definition of tangible personal property does not include such *intangibles* as services. However, this does not mean that *all* services are exempt from taxation under the Act as is evident from the definition of "sales price."

> "The term 'sales price' means the total amount for which tangible personal property, *including services agreed to be rendered as a part of the sale,* is sold, rented or leased, valued in money, whether paid in money or otherwise, *without any deduction* on account of any of the following:
>
> . . . .
>
> "2. The cost of materials used, labor *or service cost,* losses, or any other expense." I.C. § 63–3613(a). (Emphasis added.)

■ Nevertheless, for the Tax Commission to prevail in this case it must be clear from the facts that: (1) the MLS books constitute tangible personal property, (2) the transaction involving the transfer of the books from Ada MLS to Old West constitutes a "sale" of tangible personal

property "at retail," and (3) the "sales price" is the entire amount of the monthly fee assessed Old West.

We find the facts amply clear on the first point. There can be little doubt that the MLS books are tangible personal property as that term is defined by the Act.[2] The crux of Old West's dispute centers on the second and third points. They contend that although the MLS books may technically be tangible personal property, the transaction in question was not a sale at retail of such property, but rather a sale of services, an intangible. We are not persuaded. The language of the statutory provisions is clear. A "sale at retail" is "a sale of tangible personal property for any purpose other than resale of that property in the regular course of business...." I.C. § 63–3609. The term "sale" is defined as "any transfer of title, ... conditional or otherwise, ... of tangible personal property for a consideration...." I.C. § 63–3612.

■ The district court noted that neither party raised any issue as to the transfer of title of the books. Since the facts are not in dispute, we need only apply the law to those facts to determine the transfer of title question. The applicable law, absent some agreement between Old West and Ada MLS to the contrary, is Article 2 of the Uniform Commercial Code. I.C. § 28–2–101 *et seq.* Section 401 of Article 2 provides that title to goods, such as the MLS books, is transferred to a buyer upon physical delivery of the goods. I.C. § 28–2–401(2). In the case at bar, there is no evidence of any agreement between Ada MLS and Old West regarding transfer of

---

1. The other products and services which Old West receives as a result of paying the monthly fee include: (1) MLS quarterly books; (2) photos of property taken within Ada County; (3) access to "hot sheets" showing daily new listings, expired/cancelled listings, price changes, etc.; (4) unlimited listing forms and status reports; (5) listings and changes to listings; (6) the right to access information contained in MLS books through a computer terminal installed in the participant's office upon payment of additional charges; (7) an instruction booklet containing a copy and line-by-line description of the required listing form, copies of by-laws,

articles of incorporation, and the rules and regulations of Ada County MLS; and (8) access to residences or other listed properties through Ada County MLS's security locking system.

2. Far from being something insubstantial, the MLS books consist of nearly 600 pages. As indicated by the district court, the books' "organization and format which combines photographs and statistical data to make it a convenient and portable reference source which the telephone, computer or personal visits to [Ada MLS], could not replace."

title. Therefore, we conclude that title to the MLS books was transferred to Old West upon delivery. There is no dispute that said transfer was "for a consideration;" clearly it was. Thus, we conclude that there was a sale of the MLS books by Ada MLS to Old West. This sale was a "sale at retail" since Old West had no intention of reselling those books and, in fact, was prohibited from doing so by the bylaws of Ada MLS.[3]

The only remaining issue is whether the entire monthly fee is properly considered as the "sale price" of the MLS books. Old West contends that the MLS books are only one of "a myriad of services" provided Old West in consideration of the monthly fee.[4] Old West argues that only the portion of the fee attributable to the books should be assessed the tax. In support of its argument, Old West relies on a tax regulation promulgated by the commission, I.D.A.P.A. Reg. 35.02.09,1. That regulation states:

> "Where a transaction is mixed in such a manner that the tangible personal property transferred and the service rendered are distinct consequential elements having a fixed and ascertainable relationship between the value of the property and the value of the service rendered so that both may be separately stated, there exists two separate transactions and the one attributable to the sale of tangible personal property is subject to sales taxation while the other is not."

While the above provision applies to "mixed transactions," it is unclear what a "mixed transaction" is. The term is not defined in the regulation, nor is it found in the Act. The "service" component of a so-called "mixed transaction" must consist of services apart from those included within the purview of the Act, *i.e.*, those services encompassed in the definition of "sale price." (Any other reading of the regula-

tion would render the mixed transaction portion invalid as conflicting with the clear statutory language of the Act.) Old West as a taxpayer had the burden of establishing that these services were *not* services such as would be included within the definition of "sale price." It is by now axiomatic that one claiming an exemption to the general taxing authority must establish his entitlement to such an exemption. Appeal of *Sunny Ridge Manor, Inc.*, 106 Idaho 98, 675 P.2d 813 (1984); *Bistline v. Bassett*, 47 Idaho 66, 272 P. 696 (1929). Having failed to allege or break out from the monthly fee those amounts properly attributable to the additional services, the entire amount of the fee is properly considered the "sale price" for the MLS books and is the amount subject to the sales tax.

The district court properly granted summary judgment against Old West. Its decision is affirmed. Costs to respondent. No attorney fees allowed.

DONALDSON, C.J., BISTLINE and HUNTLEY, JJ., and McFADDEN, J. Pro Tem., concur.

---

3. In addition to the prohibition contained in the by-laws, the cover of the MLS books expressly states that any subsequent transfer of the books to any "non-subscriber" is subject to a $500 fine for the first offense and thereafter termination of any membership right in Ada MLS.

4. These "services" are listed in footnote 1, *supra,* and specifically are items numbers 2–8 in that footnote.